# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOREEN KOSTELNICK, | : | 3:12cv901 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
|     v. | : | |
| | : | |
| MICHAEL J. ASTRUE,[1] | : | |
| Commissioner of Social Security, | : | |
|     Defendant | : | |

## **MEMORANDUM**

Before the court for disposition is Plaintiff Doreen Kostelnick's (hereinafter "Kostelnick") appeal of the Defendant Commissioner of Social Security's (hereinafter "Commissioner") denial of her application for supplemental security income benefits.[2] (Doc. 1).

## **Background**

On June 30, 2008, Kostelnick filed a protective application for

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. See OFFICIAL SOCIAL SECURITY WEBSITE, http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm (last accessed Dec. 9, 2013). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. See FED. R. CIV. P. 25(d).

[2] Supplemental security income (hereinafter "SSI") is a federal income supplement program funded by general tax revenues (not social security taxes). 42 U.S.C. § 1381. It is designed to help the aged, blind or disabled individuals who have little or no income. 42 U.S.C. § 1381a. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits. 42 U.S.C. § 1382.

supplemental security income (hereinafter "SSI") benefits due to chronic lower back pain.[3] (Doc. 7, Admin. R. (hereinafter "R.") at 30, 128).[4] On January 2, 2009, the Bureau of Disability Determination denied Kostelnick's application.[5] Kostelnick filed a request for a hearing before an administrative law judge (hereinafter "ALJ") on February 11, 2009. (Id. at 99-101).

After approximately thirteen months, the ALJ held a hearing on March 30, 2010. (Id. at 28-66). At the hearing, the ALJ noted that Kostelnick was forty-two (42) years old on the alleged disability onset date and forty-four (44) years old on the date of the administrative hearing.[6] (R. at 18, 21).

---

[3] "Protective filing" is a term describing the first time an individual contacts the Social Security Administration to file a claim for benefits. See 20 C.F.R. § 416.340; see also SOC. SEC. ADMIN. PROGRAM OPERATIONS MANUEL SYS., GN 00204.010. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed. 20 C.F.R. § 416.340.

[4] References to "R. at __" are to pages of the administrative record filed by the Defendant as part of his Answer on July 11, 2012.

[5] The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits and supplemental security income benefits on behalf of the Social Security Administration. (R. at 88-98).

[6] Under the Social Security regulations a person under age fifty (50) is considered a "younger person." 20 C.F.R. §§ 404.1563(c) and 416.963(c). The Social Security Administration considers a claimant under fifty (50) who has a severe impairment and limited work experience as someone who may be able to adjust to other work. Id.

Kostelnick is high school educated and can read, write, speak and understand the English language. (Id. at 21). Kostelnick claims that she experiences chronic lower back pain, which precludes her from working. (Id. at 18). Kostelnick further alleges that she suffers from depression, severe pain, fatigue, irritability and headaches. (Id.)

Kostelnick testified that she lives in a two-story house with her boyfriend. (Id.) Kostelnick can cook and clean, but only in ten to fifteen minute increments before she needs to sit down. (Id. at 41). Kostelnick also stated that she has been unable to sleep through the night since her back problems began in 2005. (Id. at 40, 304-40). At most, Kostelnick is able to sleep two hours at a time. (Id. at 40-41).

On April 23, 2010, the ALJ issued a decision denying Kostelnick's application for SSI benefits finding that Kostelnick could perform a range of unskilled, sedentary work.[7] (Id. at 11-27). Kostelnick timely requested the

---

[7] The term sedentary work is defined in the regulations of the Social Security Administration as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

3

Appeals Council review the ALJ's decision on June 4, 2010. (Id. at 9-10). On March 12, 2012, the Appeals Council denied Kostelnick's request for review. (Id. at 1-5). Thus, the ALJ's decision stood as the Commissioner's final decision. As a result of the Commissioner's denial of SSI benefits, Kostelnick filed an appeal in this court on May 15, 2012.[8] The parties then briefed the issues bringing the appeal to its present posture.

**Jurisdiction**

The court has federal question jurisdiction over this Social Security Administration appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section

---

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

20 C.F.R. §§ 404.1567 and 416.967; SSR 83-10, 1983 WL 31251.

[8] Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." L.R. 83.40.1.

4

405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .").

**Standard of Review**

In reviewing a social security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision. See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). The Third Circuit Court of Appeals has explained that "substantial evidence has been defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate.'" Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute its own conclusion for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.2001) (indicating that when an ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner must indicate which evidence was accepted, which evidence

6

was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

Another critical requirement is that the Commissioner adequately develop the record. Poulous v. Comm'r of Soc. Sec., 474 F.3d 88, 95 (3d Cir. 2007) (reminding ALJs of their duty to develop the record); Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) (stating that ALJs have an affirmative duty to develop a full and fair record in social security cases). If the record is not adequately developed, remand for further proceedings is appropriate. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any **substantial gainful activity** by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

7

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates disability insurance and supplemental security income claims with a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[9] (2) has an impairment, or combination of impairments, that is severe,[10] (3) has an impairment or combination of impairments that meets or

---

[9] "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510 and 416.910. If the claimant is engaging in "substantial gainful activity", the claimant is not disabled and the sequential evaluation proceeds no further.

[10] The determination of whether a claimant has any severe impairments that has lasted or is expected to last for a continuous period of at least twelve (12) months, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1509, 404.1520(c) and 416.920(c). If a claimant does not have an impairment or combination of impairments which significantly limits his physical or mental abilities to perform basic work activities that has lasted or is expected to last for a continuous period of at least twelve (12) months, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl and handle. 20 C.F.R. § 404.1545(b). An individual's

8

equals the requirements of a "listed impairment,"[11] (4) has the "residual functional capacity" to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). Prior to addressing step four, the ALJ must determine the claimant's residual functional capacity.[12] 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See SSR 96-8p, 1996 WL 374184.[13] A regular and

---

basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

[11] A "listed impairment" is one that appears on the Commissioner's Listing of Impairments, which is "a list of impairments presumed severe enough to preclude any gainful work." Sullivan v. Zebley, 493 U.S. 521, 525 (1990); see 20 C.F.R. pt. 404, subpt. P, app. 1 (stating the listing of impairments). If the claimant has an impairment, or combination of impairments, that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

[12] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

[13] Social Security Rulings (hereinafter "SSR") constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations. Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996). SSRs do not have the force of law, id.; nevertheless,

continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. Id. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. §§ 404.1545 and 416.945; Fargnoli, 247 F.3d at 40 (defining residual functional capacity as that which an individual is still able to do despite the limitations caused by his or her impairment(s)).

**Discussion**

Based upon the medical records and testimony, the ALJ at step one of the sequential evaluation found that Kostelnick has not engaged in substantial gainful activity since June 30, 2008. (Id. at 16). The ALJ determined at step two that Kostelnick had the following severe impairment: "degenerative disc disease of the lumbar spine." (Id.) The ALJ also stated that Kostelnick's depression, anxiety and degenerative joint disease of the right elbow were non-severe impairments. (Id.) At step three, the ALJ found that Kostelnick's impairments did not individually or in combination meet or equal a listed impairment.

Prior to addressing step four, the ALJ determined that Kostelnick had the residual functional capacity to perform sedentary work requiring a

---

once published, they are binding on all components of the Social Security Administration. Walton v. Halter, 243 F.3d 703, 708 (3d Cir. 2001); 20 C.F.R. § 402.35(b)(1).

sit/stand option allowing her to alternate between a sitting and standing position every thirty (30) minutes.[14] (Id. at 17-21). In setting the residual functional capacity, the ALJ stated that the objective medical evidence did not support the opinion of Kostelnick's primary treating physician, Dr. Richard Hiscox, D.O., that Kostelnick was limited to only three hours of sitting and four hours of standing in an eight-hour workday.[15] (Id. at 19). The ALJ also found that Kostelnick's statements concerning her pain and limitations were not credible because they were overstated, inconsistent with and unsupported by the great weight of the documentary evidence. (Id.)

At step four, the ALJ determined that Kostelnick was unable to perform her past relevant work.[16] Finally, based on the residual functional capacity of sedentary work with a sit/stand option, the ALJ at step five stated that Kostelnick had the ability to perform work as a visual inspector, ticket taker and an assembler and that there were a significant number of such jobs in the local, state and national economies. (Id. at 22).

---

[14] See n.6 supra (defining sedentary work).

[15] Dr. Hiscox began treating Kostelnick in 2003 and continued treating her throughout this case. (See R. at 303-406 and 494-520).

[16] A vocational expert testified at the administrative hearing that between 2007-2008, Kostelnick performed medium, semi-skilled work as a custodian at an interstate rest area. (R. at 58-60). The vocational expert also testified that Kostelnick would not be able to perform her past relevant work, but could perform sedentary work. (Id. at 61-64).

11

The primary issue in this appeal, therefore, is whether substantial evidence supports the ALJ's finding that Kostelnick could engage in a range of full-time sedentary work. Kostelnick contends that substantial evidence does not support the ALJ's analysis for two reasons. First, Kostelnick claims that the ALJ improperly rejected the opinion of Kostelnick's treating physician, Dr. Hiscox. Second, Kostelnick argues that the ALJ improperly dismissed her claims of pain. The court addresses these issues *in seriatim*.

**A. The ALJ's rejection of Kostelnick's Dr. Hiscox's opinion**

Kostelnick first argues that the ALJ failed to assign the greatest weight possible to her treating physician's opinion when determining her residual functional capacity. The Third Circuit Court of Appeals recognizes that the "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." Fargnoli, 247 F.3d at 43; see also Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008) (stating that "an ALJ should give treating physicians' reports great weight, especially when their opinions reflect expert judgement based on a continuing observation of the patient's condition over a prolonged period of time.") (citation and internal quotation marks omitted). A treating physician's report should be accorded great weight "when the opinion reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of

12

time." Pododworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984); 20 C.F.R. § 404.1527(c)(2)(i).

The treating source's opinion is entitled to controlling weight, however, "only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . .'"[17] Johnson, 529 F.3d at 202 (quoting 20 C.F.R. 404.1527(c)(2)). When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

In choosing to reject the evaluation of a treating physician, an ALJ may not make speculative inferences from medical reports and may reject treating physician's opinions outright only on the basis of contradictory medical evidence. Id. at 317 (citations omitted). An ALJ may not reject a written medical opinion of a treating physician based on his or her own credibility

---

[17] When a treating source's opinion is not entitled to controlling weight, it is evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors including the opinion's supportability, consistency and specialization. See 20 C.F.R. § 404.1527(c)(2). An ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because that determination is an administrative finding reserved to the Commissioner. See 20 C.F.R. § 404.1527(d).

13

judgments, speculation or lay opinion. Id. An ALJ may not disregard the medical opinion of a treating physician based solely on his or her own "amorphous impressions, gleaned from the record and from his evaluation of the [claimant]'s credibility." Id. at 318 (citation omitted).

In the instant case, the ALJ rejected Dr. Hiscox's opinion that Kostelnick could not work a full eight hour workday and that her impairments would cause her to be absent from work more than three times per month.[18] (R. at 517-20). In making this finding, however, the ALJ failed to explain why the most recent probative medical evidence–Kostelnick's February 17, 2010 MRI–did not support Dr. Hiscox's opinion.

Specifically, Kostelnick's February 17, 2010 MRI established that Kostelnick has dextroscoliosis in the upper and levoscoliosis in the lower lumbar spine; bilateral infraforaminal stenosis at L3-4 due to degeneration, broad-based protrusion and extradural compression over the thecal sac; central and paracentral protrusion of the disc at L4-5 producing bilateral foraminal stenosis and compression of the L5 transiting roots especially on the left side; and bilateral foraminal stenosis with compression of the S1 transiting root somewhat prominent on the left side due to degeneration,

---

[18] Dr. Hiscox opined that Kostelnick was only capable of standing and walking for four hours and sitting for three hours in an eight hour work day. (R. at 19, 517-20).

14

central and paracentral protrusion of the disc. (Id. at 515-16). Confronted with this probative evidence of an impairment, the ALJ was required to explain why this evidence was rejected. See Johnson, 529 F.3d at 204 (stating that an ALJ may not reject pertinent or probative evidence without explanation); Cotter, 642 F.2d at 706 (stating that "there is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record.").

Moreover, the ALJ failed to cite any contrary medical opinion when she rejected Dr. Hiscox's determination that Kostelnick could not work a full eight hour workday and that her impairments would cause her to be absent from work more than three times per month. Instead, the ALJ engaged in her own lay analysis of the medical records.

The court recognizes that the residual functional capacity assessment must be based on a consideration of all the evidence in the record, including the testimony of the claimant regarding her activities of daily living, medical records, lay evidence and evidence of pain. See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121-22 (3d Cir. 2000). Only on rare occasions, however, can an ALJ's residual functional capacity determination be made without an assessment from a physician regarding the claimant's functional abilities. See Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986) (stating that "no

physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence."). An ALJ cannot speculate a claimant's residual functional capacity but must have medical evidence, and generally a medical opinion regarding the functional capabilities of the claimant, supporting their determination. See Gormont v. Astrue, No. 3:11-CV-2145, 2013 WL 791455, at *8 (M.D. Pa. Mar. 4, 2013); Ennis v. Astrue, No. 4:11-CV-1788, 2013 WL 74375, at *7 (M.D. Pa. Jan. 4, 2013); Gunder v. Astrue, No. 4:11-CV-300, 2012 WL 511936, at *14-16 (M.D. Pa. Feb. 15, 2012).[19]

Here, the ALJ stated that the objective medical evidence did not support Dr. Hiscox's opinion. The ALJ, however, does not cite any contrary medical

---

[19] In Gunder, Judge Richard Conaboy reconciled the case of Chandler v. Comm'r of Soc. Sec., 667 F.3d. 356, 361-63 (3d Cir. 2011) with Doak v. Heckler, 790 F.2d 26, 29 (3d Cir.1986) stating that:

> Any argument from the Commissioner that his administrative law judges can set the residual function capacity in the absence of medical opinion or evidence must be rejected in light of Doak. Furthermore, any statement in Chandler which conflicts (or arguably conflicts) with Doak is dicta and must be disregarded. See Government of Virgin Islands v. Mills, 634 F.3d 746, 750 (3d Cir. 2011) (holding that a three member panel of the Court of Appeals cannot set aside or overrule a precedential opinion of a prior three member panel).

Gunder, 2012 WL 511936 at *15.

16

opinion substantiating her dismissal of Dr. Hiscox's opinion. Instead, the ALJ engaged in an improper lay analysis of Kostelnick's medical records. Accordingly, the court finds that the ALJ's rejection of Dr. Hiscox's opinion without explanation of Kostelnick's February 2010 MRI or reference to any contrary medical opinion was erroneous and compels remand. See e.g., Fargnoli, 247 F.3d at 40-41 (finding that the ALJ's failure to mention and explain probative contradictory medical evidence when formulating a claimant's residual functional capacity was error requiring remand); Burnett, 220 F.3d at 121-22 (3d Cir. 2000) (same).

## B. Kostelnick's pain

Kostelnick next argues that the ALJ improperly discounted her credibility pertaining to her pain. The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered when the disability determination turns on an assessment of the level of a claimant's pain. 20 C.F.R. § 404.1529. Such cases require the ALJ to "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). Cases involving an assessment of subjective reports of pain "obviously require the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is

17

disabled by it." Id.

The social security statute and regulations guide the ALJ's assessment of subjective reports of pain. This guidance eschews wholly subjective assessments of a claimant's pain. Instead, at the outset, the ALJ is admonished that:

> [a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the evidence . . . , would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5) (A). Applying this statutory guidance, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. See 20 C.F.R. § 404.1529. Under these regulations, symptoms, such as pain, shortness of breath, and fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on

18

the claimant's ability to work.  Id.  In so doing, the medical evidence of record is considered along with the claimant's statements.  Id.

In the instant case, the ALJ judged Kostelnick's credibility of pain as follows:

> In this case, the claimant's case in establishing disability concerning her physical impairments is also directly dependent on the element of pain which is of an intractable nature.  Pain is subjective and difficult to evaluate, both quantitatively and qualitatively. Nevertheless, most organic diseases produce manifestations other than pain and it is possible to evaluate the underlying processes and degree of resultant impairment by considering all of the symptoms.  Generally, when an individual has suffered pain over an extended period, there will be observable signs such as a significant loss of weight, an altered gait or **limitation of motion**, local morbid changes, or poor coloring of station. In the present case, the claimant has complained of pain over an extended period of time.  None of the above signs of chronic pain are evident.  While not conclusory by itself, this factor contributes to the determination that the claimant is not disabled as a result of pain.

(R. at 20) (emphasis added).   The court's review of the record, however, reveals that on twenty-three (23) occasions between December 19, 2005 and December 30, 2009 Kostelnick had appointments with Dr. Hiscox where she exhibited a **decrease** in the range of motion of her lumbar spine.  (Id. at 304-09, 314-18, 324-340, and 498-514).  Additionally, Kostelnick's February 17, 2010 MRI established that Kostelnick has dextroscoliosis in the upper and levoscoliosis in the lower lumbar spine; bilateral infraforaminal stenosis at L3-4 due to degeneration, broad-based protrusion and extradural compression

over the thecal sac; central and paracentral protrusion of the disc at L4-5 producing bilateral foraminal stenosis and compression of the L5 transiting roots especially on the left side; and bilateral foraminal stenosis with compression of the S1 transiting root somewhat prominent on the left side due to degeneration, central and paracentral protrusion of the disc. (Id. at 515-16). Thus, the ALJ's assertions that "there is no objective medical evidence supporting the extent of her alleged pain" is clearly erroneous.

**Conclusion**

For the reasons stated above, the court finds that substantial evidence does not support the Commissioner's decision. Specifically, the ALJ's rejection of Dr. Hiscox's opinion and assertion that the objective medical evidence failed to support Kostelnick's assertions of pain are erroneous. Ergo, the court will vacate the Commissioner's decision and remand the case for further proceedings pursuant to 42 U.S.C. § 405(g). An appropriate order follows.

**Date:   12/09/13**                              s/ James M. Munley
                                                  **JUDGE JAMES M. MUNLEY**
                                                  **United States District Court**